

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
RUTH PINTO,

                Plaintiff,

-against-

MASSAPEQUA PUBLIC SCHOOLS,

                Defendant.
------------------------------------------------------X

MEMORANDUM AND ORDER

CV 09-5308

(Wexler, J.)

APPEARANCES:

    LAW OFFICE OF MARTIN J. COLEMAN, P.C.
    BY: MARTIN J. COLEMAN, ESQ.
    Attorneys for Plaintiff
    100 Crossways Park Drive West, Suite 412
    Woodbury, New York 11797

    SOKOLOFF STERN LLP
    BY: STEVEN C. STERN, ESQ.
        KIERA J. MEEHAN, ESQ.
    Attorneys for Defendant
    355 Post Avenue, Suite 201
    Westbury, New York 11590

WEXLER, District Judge

    This is a personal injury action in which Plaintiff Ruth Pinto ("Plaintiff") asserts a claim in negligence under New York State law, and pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12102 (the "ADA"). Named as the Defendant is Massapequa Public Schools, the entity that maintains the property on which Plaintiff alleges she was injured. Presently before the court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

1

Procedure.

## BACKGROUND

I.  Facts

   A.  The Parties and the Incident Forming the Basis of the Action

Plaintiff is an individual who was born in 1932. As discussed below, she claims that she was injured while on premises operated by Defendant. The facts related below, upon which the court relies in the context of this motion are those set forth in Plaintiff's complaint, as well as in the various depositions and uncontroverted documents submitted to the court in support of and in opposition to the present motion.

On November 4, 2008, Plaintiff, who was 72 years old at the time, drove with a friend to the East Lake Elementary School (the "School"), a public polling place operated by the Defendant. Plaintiff and her companion went to the School to vote in the election being held on that day. Plaintiff parked her vehicle in a parking spot designated for disabled individuals, pursuant to a placard that allowed such parking. Plaintiff and her friend entered the building without incident and voted. Approximately fifteen to twenty minutes after entering the building, Plaintiff and her companion exited the building using the same doorway through which they entered. Upon exit, Plaintiff tripped over what she describes as a "step that lay in the middle of the walkway." Plaintiff lost her balance, tripped and fell. She states that as a result of her fall she suffered a fractured elbow and lacerations to her arm and left leg. She alleges, inter alia, permanent injury to her elbow.

The step over which Plaintiff claims to have tripped is a single "riser step, or entrance platform," that is located at the entrance to the building. It is approximately five inches high and

painted bright yellow. In addition to the entrance used by Plaintiff, the School maintains a handicapped accessible entry. The School characterizes this entrance as "immediately to the left" of the entrance used by Plaintiff. Plaintiff states that this ramped entrance is forty-five feet south of the entrance used by Plaintiff.

B. Plaintiff's Physical Condition

As noted, Plaintiff was 72 years old in 2008. Since 2001, she has been diagnosed with osteopenia, a condition, not as severe as osteoporosis, that is characterized by lowered bone mineral density. At the time of the incident, Plaintiff took blood pressure medication known as Diovan, Fosamax for bone health, and a medication known as Synthroid for a thyroid condition.[1] In 2001, Plaintiff sought and was issued a handicapped parking permit. She states that she obtained this permit by submitting a doctor's note to the proper authorities, which note referred to Plaintiff's osteopenia.

In 2002, Plaintiff underwent hip replacement surgery. Plaintiff claims that as a result of the surgery, she has experienced " a little bit," of difficulty walking, and suffered knee pain. Although Plaintiff used a walker and/or a cane for a period of approximately three weeks following her 2002 surgery, she did not use either of these aids thereafter. Thus, at the time of the incident, it is clear that Plaintiff was able to walk independently. While Plaintiff does not dispute that she has no difficulty walking, she states that "she walked slowly and for very limited distances." Plaintiff has testified that during the six months prior to the incident forming the basis of this action, she had no difficulty ambulating. As to stairs, Plaintiff states that she uses stairs on

---

[1] Plaintiff makes no claim of disability based upon high blood pressure and/or a thyroid condition.

a daily basis without difficulty, so long as there is a stair rail present, and she is not carrying anything substantial in either of her arms.

II. <u>Plaintiff's Complaint</u>

As noted, Plaintiff's complaint alleges causes of action in negligence and pursuant to the ADA. As to the nature and extent to her claimed disability, Plaintiff states that she suffers from "chronic right hip and age related disabilities." In support of her claims of liability, Plaintiff alleges that Defendant renovated the School after 1992, and failed to alter the entrance and walkways in accord with alteration standards set forth in relevant portions of the Code of Federal Regulations. In support of the negligence claim, Plaintiff characterizes the step at the School entrance as a defective and hazardous condition known to Defendant prior to the incident forming the basis of the complaint.

III. <u>Defendant's Motion</u>

Defendant seeks summary judgment dismissing Plaintiff's complaint in its entirety. As to the federal claim, judgment is sought on the ground that Plaintiff is not an individual with a disability as defined by the ADA. Even assuming Plaintiff suffers from such a disability, judgment on this federal claim is nonetheless sought on the ground that Plaintiff cannot show that she was deprived of the benefit of any service, program, activity or public accommodation, and therefore cannot claim any ADA discrimination. Defendant also takes issue with Plaintiff's allegations regarding alteration of the School and its compliance with ADA construction guidelines. Finally, it is argued that Plaintiff cannot show negligence on the part of Defendant.

## DISCUSSION

I. Legal Principles

   A. Standards For Summary Judgement

A motion for summary judgement is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 250 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. McLee v. Chrysler Corp. 109 F.3d 130, 134 (2d Cir. 1997). However, when the nonmoving party fails to make a showing on an essential elements of its case with respect to which it bears the burden of proof, summary judgment will be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 242.

   B. Elements of an ADA Claim

Plaintiff's ADA claim alleges that she is a disabled individual who was excluded from participation or "denied the benefits of the services, programs, or activities of a public entity," on account of her disability. See 42 U.S.C. §12132. To state a claim for this type of ADA discrimination, Plaintiff must show: (1) that she is a qualified individual with a disability within the meaning of the statute; (2) that the Defendant is a public entity, and (3) that she was denied the opportunity to participate or benefit from Defendant's services, programs, or activities, or was otherwise discriminated against by the Defendant by reason of Plaintiff's disability. Brown v.

5

County of Nassau, 736 F. Supp.2d 602, 611 (E.D.N.Y. 2010). As there is no dispute regarding the public nature of the Defendant entity, at issue here are only the first and third elements referred to above.

I. Disability Within the Meaning of the ADA

The ADA defines disability as a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2); 29 C.F.R. §1630.2(g) see Henrietta D. v. Bloomberg, 331 F.3d 261, 273 n.7 (2d Cir. 2003) (definition of disability is same for all ADA claims). When determining whether a plaintiff suffers from an ADA disability, courts focus first on whether plaintiff suffers from an impairment. Second, the court determines whether the life activity identified by the plaintiff constitutes a "major life activity" under the ADA. Finally, the court considers whether plaintiff's identified impairment renders her "substantially limited" in the identified major life activity. Weixel v. Board of Educ. of City of New York, 287 F.3d 138, 147 (2d Cir. 2002); McCowan v. HSBC Bank USA, N.A., 689 F. Supp.2d 390, 399 (E.D.N.Y. 2010); see Bragdon v. Abbott, 524 U.S. 624, 631 (1998).

Physical impairments within the meaning of the ADA include conditions that affect one or more of the body's systems. Such systems include the musculoskeletal system. See 29 C.F.R. § 1630.2 (h)(1). Once a physical or mental impairment is identified, Plaintiff must identify a "major" life activity affected by this impairment. Major life activities include functions such as walking. 29 C.F.R. §1630.2(i)(1)(i). Finally, the identified impairment must substantially limit the major life activity identified.

Those who are "substantially limited" in major life activities are either unable to perform such activities or "significantly restricted as to the condition, manner or duration" under which the

activity may be performed, when compared with the condition, manner or duration under which the average person in the general population can perform that same major life activity. When determining whether there is a substantial limitation, the court considers: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment and (3) the permanent or long term impact resulting from the impairment. See Joseph v. North Shore University Hosp., 2011 WL 573582 *7 (E.D.N.Y. 2011).[2] While "almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled." Id., quoting, Brower v. Continental Airlines, Inc., 62 F. Supp.2d 896, 903-04 (E.D.N.Y. 1999).

III. Disposition of the Motion

   A. Plaintiff Does Not Suffer From an ADA Disability

To defeat summary judgment Plaintiff must show, at the very least, that there is a question of fact as to whether she can establish the disability elements of: (1) physical or mental impairment; (2) "major life activity," and (3) substantial impairment. Upon review of the facts in this case, the court holds that Plaintiff's failure to make the requisite showing as to substantial limitation is fatal to her claim.

Plaintiff's claim is that the physical impairment of osteopenia and lingering post-hip surgical issues substantially impair her ability to walk. Even assuming that osteopenia constitutes

---

[2] The ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009, rejects an interpretation of "substantially limited" to mean "significantly restricted," and requires a broader interpretation of the term so as to expand the class of individuals entitled to protection under the ADA. This broader interpretation, however, applies only to cases arising after the effective date of the ADAAA, and therefore has no application here. See Wega v. Center for Disability Rights, Inc. 2010 WL 3933563 *1 n.1 (2d Cir. 2010).

an ADA physical impairment, there is no evidence that such impairment substantially limits Plaintiff's ability to walk. Plaintiff's own testimony establishes that she is neither unable, nor "significantly restricted," in her ability to walk. Instead, the facts establish clearly that Plaintiff can walk and use stairs unassisted. Plaintiff testified at her notice of claim hearing that she had no difficulty walking during the six months prior to the incident, and that she entered the School without incident. Plaintiff's deposition testimony was consistent with her earlier testimony. Thus, at deposition, when asked whether she had difficulty ambulating or climbing steps in November of 2008, Plaintiff responded, "no," to both questions. As to her trip to the School on the date of the incident, Plaintiff testified that she had no trouble entering the building and that she had no trouble using a step. She stated further that she did not look for a ramp, and if she had known there was a ramp to enter the building, she would not have used it. Plaintiff's Rule 56.1 statement agrees with Defendant's statement that in November 2008, Plaintiff was able to walk independently and without difficulty.

Plaintiff's ability to obtain a handicapped parking placard does not require any particular finding here. A county's decision to allow an individual to park in a handicapped designated spot is in no way equivalent to a finding that Plaintiff is disabled within the meaning of the ADA. More compelling, and indeed, dispositive of the substantial limitation issue is Plaintiff's own testimony as set forth above. Even construction of Plaintiff's testimony in the light most favorable to her supports nothing more than the fact that she may be slowing down as a result of the normal aging process. At most, this fact lends some support to a claim that Plaintiff's age and/or medical condition has had some affect on her ability to walk; it does not support a claim of substantial limitation on that ability and is therefore insufficient to create an issue of fact as to

8

whether Plaintiff is disabled. Accord Brower, 62 F. Supp.2d at 904 (fact that impairment "affects" walking insufficient to show substantial limitation). The court finds particularly telling on the substantial limitation issue Plaintiff's memorandum of law submitted in opposition to the instant motion. That memorandum does nothing more than state the standards to be applied. It points to not a single piece of evidence supporting the notion that Plaintiff is substantially limited in her ability to walk.

In sum, the facts testified to by Plaintiff and agreed to in court filings in this motion establish, without doubt, that Plaintiff was not substantially limited in her ability to walk at the time of the incident. Accordingly, no rational jury could find that Plaintiff was disabled within the meaning of the ADA. Under these circumstances the court holds that Plaintiff has not come forward with any evidence sufficient to defeat the motion for summary judgment. Accordingly, it is not necessary to consider the other arguments set forth in support of the motion for summary judgment dismissing the ADA claim, and the motion with respect to that claim is granted.

IV.     State Law Negligence Claim

In light of the dismissal of Plaintiff's single federal claim, it is inappropriate to exercise supplemental jurisdiction over the negligence claim asserted pursuant to New York State Law. Giordano v. City of New York, 274 F.3d 740, 754-55 (2d Cir. 2001) (error for district court to exercise supplemental jurisdiction over plaintiff's state law claims where federal disability claims were dismissed). Accordingly, the court dismisses Plaintiff's state law claim of negligence without prejudice to pursuing that claim in state court.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment dismissing the

claim pursuant to the Americans with Disabilities Act is granted. The court expresses no position as to the merits of the negligence claim. The Clerk of the Court is directed to terminate the motion for summary judgment and to close the file in this matter.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
October 19, 2011